JONES *v.* STATE.

Crim. 3957

Opinion delivered September 30, 1935.

Dewey Glass, W. N. Ivie and Charles W. Ivie, for appellant.

Carl E. Bailey, Attorney General, and Guy E. Williams, Assistant, for appellee.

HUMPHREYS, J. Appellant, Silas Jones, was indicted in the circuit court of Madison County for murder in the first degree for shooting and killing Earl Petree near the town of St. Paul in said county. He was tried in said court upon the charge on the 19th day of April, 1935, which resulted in a conviction for manslaughter, and, as a punishment for the crime, was adjudged to serve a term of five years in the State penitentiary, from which is this appeal.

The first assignment of error argued for a reversal of the judgment is that the court instructed the jury upon the law of murder in the first and second degrees without any substantial evidence upon which to base the instructions, and this instruction, being abstract, resulted in prejudice to appellant's rights. There is no merit in this contention. Appellant admitted the killing on the trial of the cause, and claimed that he had to in necessary self-defense. Appellant shot deceased through the body and head with a seven-shot .22 cal. pistol on the highway leading to St. Paul while deceased was hauling a load of ties into town. Bad feeling existed between appellant and deceased. They had had several quarrels and altercations covering a period of several months prior to the killing. Some time in the morning before the killing early in the afternoon, appellant armed himself with the loaded pistol and went to St. Paul as he stated for the purpose of getting some groceries for his uncle. He remained in town

until noon or a little after and during the time refused to go swimming with some friends who requested him to do so, stating to them he had some unfinished business to attend to. Near noon, he got his groceries and put them in John Burnett's wagon to take to his uncle. Burnett stopped to water his team, and, while doing so, appellant passed him saying he would walk on up the road. After Burnett had driven a considerable distance, appellant came back and met him and told him he was compelled to kill a man up the road. He did not say whom he had killed or make any further explanation to Burnett. Appellant turned and walked along by the wagon as far as, the hill or mountain but, before reaching the place where deceased was lying, he left the wagon and road and hastily went up the hill into the woods. Burnett drove on and did not stop to view the body. After Burnett passed the body and had driven two or three hundred yards, appellant came off the mountain to the road and got in the wagon, and, after Burnett had driven about two miles, they were overtaken by officers and searched. The officers required them to hold up their hands during the search, and, when he started to search appellant, he, appellant, admitted having a .22 cal. pistol, saying he had shot the deceased with it, and did not intend to fight the law or anything.

William Langley testified that he was one-fourth of a mile south of where the killing occurred when the shots were fired, three in number, and, looking in that direction, saw a man run toward a team headed west and stop it. After doing so, the man proceeded west until he met a wagon going east but turned and followed the wagon, and before reaching the scene of the tragedy turned up the mountain and came down the mountain some two or three hundred yards east and got in the wagon.

Alvin Holiday testified that he was in a field about one-eighth of a mile from where the killing occurred, and that his attention was attracted by the firing of three shots; that he observed appellant stop a team that was headed west, and then go on himself toward St. Paul until he met a wagon going east; that he turned and followed

the wagon for a few minutes, and then took up the hill through the woods.

Certain witnesses ·were permitted, over the objection of appellant, to testify that they made a search of the place where the deceased was shot a week after the occurrence and found a bullet which was produced buried a small distance in the ground where deceased's head rested after being shot.

The ball that passed through appellant's head entered his forehead and came out through the back of his head.

The record reflects that deceased was unarmed at the time he was shot.

The testimony detailed above was sufficient from which a reasonable inference might be drawn that appellant killed deceased with malice aforethought, premeditation and deliberation, so the court was warranted in instructing the jury as to the law of murder in both the first and second degrees as well as manslaughter.

The next assignment of error argued for a reversal of the judgment is that the court refused to give appellant's requested instruction relative to the character of circumstantial evidence necessary to warrant a conviction. The requested instruction is as follows:

"The court instructs the jury that circumstantial evidence is legal evidence, and that one may be convicted upon circumstantial evidence as well as direct proof. Where the State relies upon circumstantial evidence alone for a conviction, as in this case, it is not enough that the circumstances point to, and are consistent with, the defendant's guilt; but they must point to his guilt in such a way that they cannot reasonably be true in the ordinary nature of things, and the defendant be innocent."

The instruction was incorrect and properly refused because the State did not rely upon circumstantial evidence alone for a conviction. The requested instruction was abstract in this particular, and the court did not err in refusing to give it.

The next assignment of error argued for a reversal of the judgment is that the court erred in refusing to give his requested instruction No. 1 to the effect that, before a confession of one charged with crime is admissible in evidence against him, it must appear that it was voluntarily made without anybody holding out any hope of reward or leniency or fear of punishment for not doing so. Appellant not only made a confession when arrested that he killed the deceased, but in the trial admitted the killing and testified to all the facts relative thereto that were contained in his confession. The record reflects without dispute that the confession was voluntarily made. The court required the officer to whom the confession was made to state the same in its entirety before the testimony was closed, so there is no merit in appellant's argument that at first the court did not require the officer to testify to the confession in its entirety.

The next and last assignment of error argued for a reversal of the judgment is that the court erred in the admission of testimony to the effect that one week after the killing a bullet was found in the ground where deceased's head rested when discovered after he was killed. Appellant's pistol with which he killed the deceased had been introduced in evidence in the condition it was when the officer took it from him. The cartridges were removed from the pistol and also introduced in evidence. It is argued that, because it was not positively shown that it was the bullet that had been fired from appellant's pistol, it was improper to admit it in evidence. The place it was found, the kind and character of the bullet, and the pistol itself being present, made it possible for the jury by comparison to determine whether the bullet had been fired from appellant's pistol, and was competent testimony for that purpose. The mere fact that the bullet had been found a week after the killing did not render its introduction inadmissible. This fact was a circumstance for the jury to consider in weighing the evidence. The parties who found it testified to having done so, and the manner and kind of search they made for it. It became a question for the jury to say under

these circumstances whether it had been fired by appellant through the head of deceased or whether it had been deposited in the ground after the killing by some interested party.

No error appearing, the judgment is affirmed.